Louis M. Solomon (LS-7906)
Brendan J. O'Rourke (BO-2351)
Kevin J. Perra (KP-3723)
PROSKAUER ROSE
1585 Broadway
New York, NY 10036-8299
Phone: (212) 969-3000
Fax: (212) 969-2900
Email: borourke@proskauer.com

*Attorneys for Plaintiff Stokely-Van Camp, Inc.*







09 CV

09 Civ.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STOKELY-VAN CAMP, INC.,<br><br>    Plaintiff,<br><br> v.<br><br> THE COCA-COLA COMPANY and<br> ENERGY BRANDS INC.,<br><br>    Defendants. | **COMPLAINT FOR FALSE<br> ADVERTISING, TRADEMARK<br> DILUTION, DECEPTIVE ACTS AND<br> PRACTICES, INJURY TO BUSINESS<br> REPUTATION, UNFAIR<br> COMPETITION**<br><br> **PLAINTIFF DEMANDS A TRIAL BY<br> JURY** |

Plaintiff, Stokely-Van Camp, Inc. ("SVC" or "Plaintiff"), by its undersigned attorneys, for

its Complaint against defendants The Coca-Cola Company ("Coca-Cola") and Energy Brands

Inc. d/b/a Glacéau ("Glacéau"), alleges as follows (Coca-Cola and Glacéau will be referred to

herein together as "Defendants"):

## NATURE OF THE ACTION

1.     This is an action for false advertising, trademark dilution, deceptive acts and

practices, injury to business reputation, and unfair competition under the Federal Trademark Act

of 1946, as amended, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), as well as New York state

and common law.

1

2.      SVC is the manufacturer of GATORADE® Thirst Quencher ("GATORADE"), the number one selling sports drink in the United States and the world. This action arises from Defendants' false and deceptive advertising campaign, launched approximately two weeks ago, for a competitive brand of sports drink called Powerade ION4®.

3.      Specifically, SVC seeks to preliminarily and permanently enjoin Defendants from continuing to run comparative advertising making the false and deceptive claim that Powerade ION4 is superior to GATORADE. The claim is apparently premised on the fact that Powerade ION4 contains trace amounts of two electrolytes (magnesium and calcium) whereas GATORADE does not. Defendants have rolled out a national advertising campaign (on magazine covers and in other print, on billboards, on the Internet, on product labeling, and on point-of-purchase displays) that:

- touts Powerade ION4 as "THE COMPLETE SPORTS DRINK" while at the same time claiming that GATORADE is "MISSING TWO ELECTROLYTES" and "INCOMPLETE;"

- claims that Powerade ION4 represents an "UPGRADE" in sports drink formulas that will make consumers perform better on the playing field;

- describes the additional electrolytes in Powerade ION4 as "critical;" and

- claims that Powerade ION4 replaces four electrolytes (sodium, potassium, magnesium and calcium) "in the same ratio typically lost in sweat."

Not one of these claims is true. There is no evidence, scientific or otherwise, that Powerade ION4 functions better than GATORADE as a sports drink. There is no evidence that Powerade ION4 will help consumers achieve better hydration, have more energy, or get nutrients that will result in improved athletic performance. There is no evidence that the minute quantities of magnesium and calcium present in Powerade ION4 make it superior to GATORADE in any way.

Specifically, Powerade ION[4] contains only 2.5 milligrams of calcium and 1.2 milligrams of magnesium per eight ounce serving. These levels represent less than one-half of one percent (0.50%) of the recommended dietary intake level for adults and are not nutritionally or physiologically significant. Nor is there any evidence that there is a "typical" ratio of electrolytes lost in sweat, or that replacing these electrolytes in a particular ratio makes Powerade ION[4] any better as a sports drink.

4.       To make matters worse, Defendants have chosen to couple their false and deceptive claims regarding GATORADE and Powerade ION[4] with mutilated and distorted depictions of GATORADE's world famous trademark, logo and trade dress. For example, in many executions, Defendants show the GATORADE bottle (and logo) chopped in half, and labeled "INCOMPLETE," side-by-side with a beauty shot of the full Powerade ION[4] bottle below the headline "COMPLETE." Here is an illustration:



These impactful visuals not only emphasize and reinforce Defendants' false claim that GATORADE is incomplete and inferior; they also dilute, tarnish and disparage the famous

GATORADE brand and its trademarks and trade dress in violation of federal and New York state law.

5.    Defendants' entire advertising campaign for Powerade ION4 is a calculated, intentional strategy designed to falsely and viciously attack the readily-identifiable market leader, GATORADE, in the hopes of unfairly gaining precious market share. As *Advertising Age*, a leading advertising industry journal, reports: "It's a classic challenger strategy, except it comes from one of the world's biggest marketers, Coca-Cola Co. The company might be a giant when it comes to soda, but in sports drinks, Coke's Powerade runs in the shadow of . . . Gatorade . . . . [T]he smaller rival is undertaking a . . . print and outdoor effort that positions the category leader as only half the brand Powerade is."

6.    It is critical that the Court put an end to Defendants' deception at once. Defendants' marketing plan is escalating, with each execution causing additional irreparable harm to the GATORADE brand. What started as a mention in *Advertising Age* has grown to product labeling and in-store displays, a cover and advertising spread in national magazines, billboards in several major cities, print advertisements, and a relaunched website. This campaign will reportedly include additional elements, such as video vignettes featuring ESPN celebrities, mobile applications, and banner advertisements. Again according to *Advertising Age*, Defendants' clear "plan is to blitz the market with messaging that Gatorade is an inferior method of hydration," just as the biggest selling season for sports drinks is beginning. Defendants' goal here is to cause the maximum possible damage to SVC and the GATORADE brand. It must be stopped at once.

**THE PARTIES**

7.    Plaintiff SVC is a corporation organized under the laws of Indiana with its principal place of business in the State of Illinois.

8.     Plaintiff SVC is the manufacturer of GATORADE, the number one selling sports drink in the world.

9.     Upon information and belief, Defendant Coca-Cola is a corporation organized under the laws of Delaware with its principal place of business in the State of Georgia.

10.     Upon information and belief, Defendant Energy Brands Inc. does business under the name Glacéau and is a corporation organized under the laws of New York with its principal place of business in the City and State of New York.  Upon information and belief, Defendant Glacéau is a wholly owned subsidiary of Defendant Coca-Cola.

11.     Defendants are the manufacturers of the sports drinks Powerade and Powerade ION[4].  Upon information and belief, Defendant Glacéau is responsible for marketing and promotion of these products.  Upon information and belief, in the coming weeks or months, Defendants plan to take Powerade off the market in the United States and replace it with Powerade ION[4].

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and § 1338(a) and (b), because this action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*.  This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

13.     Upon information and belief, this Court has personal jurisdiction over Defendant Coca-Cola pursuant to N.Y. C.P.L.R. §§ 301 and 302 because, among other things, Coca-Cola regularly transacts, does and solicits business in this District, distributes Powerade ION[4] to retail establishments in this District, and advertises for Powerade ION[4] in this District.

14.     Upon information and belief, this Court has personal jurisdiction over Defendant Glacéau pursuant to N.Y. C.P.L.R. §§ 301 and 302 because, among other things, Glaceau

regularly transacts, does and solicits business in this District, distributes Powerade ION[4] to retail establishments in this District, and advertises for Powerade ION[4] in this District.

15.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to these claims arose in this District.

## STATEMENT OF FACTS

### SVC's GATORADE

16.  GATORADE was born on the football fields of the famed University of Florida "Gators" in 1965. Following the hospitalization of several players for severe dehydration, a group of University of Florida nephrologists and other physicians formulated a new beverage, with an optimal balance of carbohydrates and electrolytes, specifically designed to rapidly rehydrate and refuel players so they would be able to perform at peak levels. The Gators' winning record – and, in particular, the players' ability to out-endure and out-perform the competition in the final quarter – caught the attention of athletes and coaches throughout the country who clamored for the secret beverage that eventually became known as GATORADE.

17.  Forty years later, GATORADE is the number one selling sports drink in the United States. GATORADE is, and has always been, scientifically formulated to rapidly rehydrate and energize the active person, while replenishing critical electrolytes lost in sweat. Indeed, the objectives for the product are simple and are succinctly expressed on the product's label: "REHYDRATE, REPLENISH, AND REFUEL."

18.  GATORADE is specifically formulated to address the number one danger posed to athletes – professional, college, and casual alike – dehydration. The energy generated by working muscles during exercise rapidly heats the body. The body's physiological response is to excrete sweat, the evaporation of which serves to lower the body's temperature. Some athletes

can lose as much as two liters of sweat during an hour of vigorous exercise. GATORADE helps to replenish these lost fluids, which, in turn, helps to maintain peak athletic performance.

19.    GATORADE also helps to replenish certain critical electrolytes (namely sodium, potassium, and chloride) which are lost in significant amounts in sweat during exercise. Maintaining a proper level of these electrolytes – particularly sodium – in the bloodstream is vital to maintaining cardiovascular and thermoregulatory function.

20.    GATORADE accomplishes its goal of "refueling" by supplying athletes with calories in the form of carbohydrates that are quickly converted to available energy and that help reduce muscle fatigue.

21.    Throughout its history, SVC has remained true to GATORADE's scientific and physiologic roots, constantly testing and confirming the efficacy of the product's formulation. SVC has invested tens of millions of dollars in product development and research. In the past twenty years, more than 100 research studies have been published on various aspects of GATORADE's efficacy. As a result, GATORADE is the most studied sports drink in the world. It represents the "Gold Standard" for sports drinks.

22.    The Institute of Medicine and the American College of Sports Medicine (among other professional organizations) have issued position stands announcing their conclusions, based on a review of the relevant scientific evidence, that [complete and] properly formulated sports drinks contain sodium (~0.5-0.7 g/L) and potassium (~0.8-2.0 g/L), as well as about 5-10% carbohydrates. These organizations do not recommend the inclusion of magnesium or calcium in sports drinks. Gatorade's formulation is consistent with the recommendations of these organizations.

**Defendants' Deceptive Advertising for Powerade ION[4]**

23.    SVC and Defendants are competitors in a multi-billion dollar market for sports drinks. More than fifteen years ago, Coca-Cola launched its Powerade sports drink. Over the years, Defendants have released various products under its Powerade line in an attempt to compete directly with GATORADE. Most recently, Defendants launched a new product called Powerade ION[4]. A true and correct copy of the product label for Powerade ION[4] is attached hereto as Exhibit A (the "Label"). According to the Label, Powerade ION[4] contains an "ADVANCED ELECTROLYTE SYSTEM" which "replenishes 4 critical electrolytes in the same ratio typically lost in sweat." The Label also claims that "[o]ther sports drinks don't." The Label identifies the four allegedly "critical" electrolytes as sodium, potassium, calcium and magnesium and contends that the formulation for Powerade ION[4] represents "the evolut ION[4] of sports drinks." The Label concludes by promising consumers that they will "[u]pgrade [their] formula" and "[u]pgrade [their] game" if they purchase this product.

24.    During the week beginning March 22, 2009, Defendants launched an aggressive multi-media advertising campaign for its new Powerade ION[4] product, which includes print, point-of-sale, billboard and internet advertising, as well as an advertising partnership with ESPN that involves print and video/text advertisements through various electronic media.

25.    In these advertisements, Defendants make the literally false and highly deceptive claim that GATORADE is "INCOMPLETE" because it is "MISSING TWO ELECTROLYTES" (specifically, magnesium and calcium) and that Powerade ION[4] is "COMPLETE" because it includes these two electrolytes. What Defendants do not tell consumers is that magnesium and calcium are not essential for sports drinks and, in any event, are found in Powerade ION[4] in such low trace levels that they will have no physiological or nutritional effect. The advertisements

further specifically communicate that, due to this difference in formulation, the use of Powerade ION[4] as compared to GATORADE will enhance performance during athletic activity.

26.     As part of this campaign, Defendants have erected, in cities across the nation, a series of billboard advertisements that purport to compare GATORADE with Powerade ION[4] (the "Billboard Advertising"). Upon information and belief, Defendants have installed or intend to install Billboard Advertising in at least sixteen major markets across the United States. There are at least two different versions of the Billboard Advertising.

27.     The first version of the Billboard Advertising is actually a series of two billboards. The first billboard in the series shows the vertical half of the famous GATORADE bottle on one side, with the other side of the billboard left uncovered. The text "DON'T SETTLE FOR AN INCOMPLETE SPORTS DRINK" is emblazoned above the distorted GATORADE bottle. Below this, an arrow points to the GATORADE bottle with the following text, highlighted in a bold, bright orange font against a contrasting dark background:

### MISSING TWO ELECTROLYTES
### Ca CALCIUM  Mg MAGNESIUM

A few feet down the road, or directly across the road from the first billboard, sits another billboard, this one showing a fully intact bottle of Powerade ION[4]. It reads "INTRODUCING THE COMPLETE SPORTS DRINK with ION[4]." A photograph of an example of the first version of the Billboard Advertising is attached hereto as Exhibit B. This Billboard Advertising is currently up in several major markets, including in the New York and Miami metropolitan areas. Upon information and belief, unless enjoined, Defendants plan to roll out this type of Billboard Advertising in additional markets across the country.

28.     Defendants are also running a second version of the Billboard Advertising that contains, on a single billboard, all of the content described above. Specifically, in this version,

the left side of the billboard includes the photograph of the GATORADE bottle, sliced in half and labeled as "INCOMPLETE," and the right side of the billboard contains the photograph of the allegedly "COMPLETE" Powerade ION[4] bottle. The headlines and copy are identical to that described in paragraphs 25 and 26 above. A photograph of an example of the second version of the Billboard Advertising is attached hereto as Exhibit C. This second type of Billboard Advertising is currently up in the Chicago metropolitan area. Upon information and belief, unless enjoined, Defendants plan to roll out this second type of Billboard Advertising in additional markets across the country.

29. The Billboard Advertising clearly communicates that the "COMPLETE" Powerade ION[4] is superior to the "INCOMPLETE" GATORADE because Powerade ION[4] contains magnesium and calcium which are "MISSING" from GATORADE. These claims are false. There is no scientific basis to support that Powerade ION[4] performs better than GATORADE as a sports drink: Powerade ION[4] will not help consumers achieve better hydration; Powerade ION[4] will not provide consumers with energy in a faster or more efficient manner; and Powerade ION[4] will not replenish any nutrients that will result in improved athletic performance. Specifically, there is no scientific basis to establish that the presence of trace amounts of magnesium and calcium in Powerade ION[4] provides any functional benefit for consumers. In fact, the amount of calcium (2.5 milligrams per 8 ounces) and magnesium (1.2 milligrams per 8 ounces) present in Powerade ION[4] represent, respectively, less than one-half of one percent of the recommended dietary intake levels for adults. These amounts are nutritionally insignificant.

30. The Billboard Advertising is only one component of Defendants' false and misleading advertising campaign for Powerade ION[4]. Defendants are also running an advertisement on the front cover and inside cover of the current issue of *ESPN Magazine* which

was delivered to more than one million subscribers during the first week of April (the "ESPN Cover Take-Over"). In this advertisement, the cover of *ESPN Magazine* contains an additional half-page flap that is folded over the right hand side of the cover. The flap is white, contains the half of the magazine masthead, and creates the illusion that half of the magazine cover is missing. To drive the point home, the text "(YOU WOULDN'T SETTLE FOR AN INCOMPLETE COVER)" is printed on the flap. When the flap is opened, the reader sees an image of the distinctive GATORADE bottle, chopped in half vertically, with the text: "THEN DON'T SETTLE FOR AN INCOMPLETE SPORTS DRINK." An arrow points to the GATORADE bottle with the following text, highlighted in a bold, orange font against a contrasting dark background:

### MISSING TWO ELECTROLYTES
### Ca CALCIUM  Mg MAGNESIUM

31.     Inside the front cover of the magazine (and attached to the flap) is a two-page Powerade ION[4] advertisement that shows an image of a full Powerade ION[4] bottle, with the headline "INTRODUCING THE COMPLETE SPORTS DRINK." Below the headline, the copy reads "COMPLETE WITH 4 ELECTROLYTES IN THE SAME RATIO TYPICALLY LOST IN SWEAT." The electrolytes are identified, again in a capitalized font, as sodium, potassium, calcium, and magnesium. The advertisement concludes with the statement: "UPGRADE YOUR FORMULA. UPGRADE YOUR GAME." A true and correct copy of the ESPN Cover Take-Over is attached to this Complaint as Exhibit D.

32.     Defendants have run an advertisement which is virtually identical to the ESPN Cover Take-Over on the cover of the magazine *Stack*, a publication directed at high school athletes and the high school sports community (the "Stack Cover Take-Over"). However, in the Stack Cover Take-Over, Defendants make the additional claim that the four electrolytes that it

11

replaces (including magnesium and calcium) are "CRITICAL." A true and correct copy of the Stack Cover Take-Over is attached to this Complaint as Exhibit E.

33. An alternative version of the print ad ("The Alternative Print Ad") has run within the *Sports Business Journal* and, on information and belief, other publications. The Alternative Print Ad consists of two separate advertisements that appear on consecutive pages within the publication. The first advertisement is identical to the back of the flap of the ESPN Cover Take-Over, with the exception that the headline reads: "DON'T SETTLE FOR AN INCOMPLETE SPORTS DRINK." The second advertisement is very similar to the one that appears inside the cover of the ESPN Cover Take-Over. A true and correct copy of the Alternative Print Ad is attached to this Complaint as Exhibit F.

34. The ESPN Cover Take-Over, the Stack Cover Take-Over, and the Alternative Print Ad include the same false and deceptive claims found in the Billboard Ads. Once again, Defendants are making the false and deceptive claim that GATORADE is incomplete and does not serve its intended purpose as a sports drink, whereas the allegedly complete Powerade ION$^4$ is superior and consumption of Powerade ION$^4$ will result in superior performance. Defendants cannot substantiate this superiority claim. There is no science that establishes or even suggests that GATORADE is not highly efficacious or is not able to serve its intended purpose as a sports drink or that it is in any way inferior to Powerade ION$^4$.

35. The ESPN Cover Take-Over, and the Stack Cover Take-Over also contain the false and misleading claim that Powerade ION$^4$ is "complete with 4 electrolytes in the same ratio typically lost in sweat." Science overwhelmingly confirms that there is no "ratio [of electrolytes] *typically* lost in sweat." Instead, the electrolyte composition of sweat is highly variable, both across individuals and even within the same individual depending on factors such as the rate of secretion, the state of training, and the state of heat acclimation. Moreover, Defendants do not

make any attempt to identify whether the alleged "ratio" is relative to the volume of liquid or something else, such as the amount of electrolytes relative to each other.

36.     The ESPN Cover Take-Over, the Stack Cover Take-Over, and the Label also contain the tag line "Upgrade your formula. Upgrade your game," thus claiming to consumers that Powerade ION[4] is superior to other sports drinks, including GATORADE, and provides consumers with a performance benefit. These claims are also unsubstantiated by science and highly misleading.

37.     In addition, Defendants are displaying, or causing the display of, false and deceptive point-of-sale materials at supermarkets and other retailers that state that Powerade ION[4] is "COMPLETE WITH 4 CRITICAL ELECTROLYTES," once again identifying the electrolytes as sodium, potassium, calcium and magnesium. A true and correct copy of the Powerade ION[4] in-store display is attached to this Complaint as Exhibit G.

38.     Defendants have also recently relaunched the Powerade website, found at www.us.powerade.com to continue their false and deceptive advertising for Powerade ION[4] (the "Website Ad"). True and correct copies of the webpages constituting the Website Ad are attached hereto as Exhibit H. Visitors logging on to the Powerade website are confronted with an animation with multiple screens presented sequentially. Specifically, the first page of the Website Ad to load shows a full blank page labeled "COMPLETE WEBSITE," quickly followed by a half sized blank page with a "loading" note, labeled "INCOMPLETE WEBSITE" and containing the statement "YOU WOULDN'T SETTLE FOR AN INCOMPLETE WEBSITE." After a few seconds, the consumer then sees an image of an unlabeled sports drink bottle cut in half, in conjunction with text identical to that seen in the Billboard Advertising: "THEN DON'T SETTLE FOR AN INCOMPLETE SPORTS DRINK" and "MISSING TWO ELECTROLYTES / Calcium Magnesium." After a few more seconds, the screen is converted to a page showing a

full bottle of Powerade ION[4] and the text "INTRODUCING THE COMPLETE SPORTS DRINK." Other portions of Powerade's U.S. website repeat the false and misleading claims that Powerade ION[4] contains a "perfect match to the ratio typically last in sweat" and that Powerade ION[4] will improve performance.

39.     Again, Defendants' Website Ad claims that its formulation for Powerade ION[4] is "complete" (due to the addition of trace amounts of calcium and magnesium) and that other brands (including GATORADE) are "incomplete" if they do not contain these electrolytes, and these claims are false and deceptive. Defendants' claim that the inclusion of calcium and magnesium will result in an "upgrade" is also false and deceptive. Although the distorted bottle in the Website Ad does not have a GATORADE label on it, consumers familiar with GATORADE and the other Powerade ION[4] advertisements in this campaign will undoubtedly understand that a comparison is being made to GATORADE. Indeed, because GATORADE is the overwhelming market leader of sports drinks, any comparison to other sports drinks will necessarily include a comparison to GATORADE. In fact. in an article about Defendant's advertising campaign that appeared in the on March 23, 2009 issue of *Advertising Age*, the senior VP for marketing for Powerade acknowledged that "[Gatorade is] the lion in the category . . . . People associate [Gatorade] with the category." A true and correct copy of this article is attached hereto as Exhibit I.

40.     Each of the advertisements described above also communicates to consumers that Powerade ION[4] provides levels of calcium and magnesium that are significantly from a dietary perspective. This is false. Powerade ION[4] contains a mere 2.5 milligrams of calcium and 1.2 milligrams of magnesium per eight ounce serving. These levels represent, respectively, less than 0.25% and 0.38% of the recommended dietary intake level for adults for these nutrients and are not nutritionally or physiologically significant.

41. Defendants' deception is intentional, a fact which is confirmed by public statements made by Defendants about their new advertising campaign. For example, after interviewing Defendants' marketing executives about the new campaign, *Advertising Age* reported in its March 23rd issue that "Powerade's plan is to blitz the market with messaging that GATORADE is an inferior method of hydration."

42. SVC has demanded that Defendants cease their unlawful conduct, but Defendants have continued their blatant violation of SVC's valuable rights. Copies of correspondence between the parties, including a conditional offer by Defendants to cease comparative advertising explicitly using the GATORADE trademarks and trade dress and to delete the word "critical" from the Powerade ION$^4$ label, are attached hereto as Exhibit J. Nonetheless, Defendants are continuing the conduct described in this Complaint.

43. Upon information and belief, unless enjoined, Defendants will only continue to escalate this false advertising campaign for Powerade ION$^4$.

## FIRST CLAIM
### (Violation of Section 43(a) of the Lanham Act – 15 U.S.C. § 1125(a))

44. Plaintiff SVC repeats and realleges each and every allegation contained in Paragraphs 1 through 43 of the Complaint as if set forth in full herein.

45. The conduct of Defendants, as described above and otherwise, constitutes false advertising because of the aforementioned and other false and misleading representations and descriptions in Defendants' advertisements. The advertisements, labels, and other representations are likely to mislead, or have misled, consumers about the nature, characteristics, and quality of SVC's GATORADE product and/or Defendants' Powerade ION$^4$ product, and are likely to cause, or have caused, consumers to falsely believe, among other things, that Defendants' Powerade ION$^4$ product is superior to SVC's GATORADE in that GATORADE is

unable to serve its intended purpose and that use of Defendants' Powerade ION[4] product will enhance the performance of athletes, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46.     Defendants are willfully, knowingly and intentionally making false representations and descriptions of their Powerade ION[4] product and SVC's GATORADE product, and intend to continue making such false representations and descriptions in advertising unless enjoined by this Court, so as to deceive, mislead and confuse consumers and the purchasing public into believing that, among other things, GATORADE is ineffective for its intended purpose and that Defendants' Powerade ION[4] will improve performance as compared to SVC's GATORADE product.

47.     By reasons of and as a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to SVC, for which there is no adequate remedy at law, and for which SVC is entitled to injunctive relief.

48.     By reason of Defendants' unlawful acts and practices, SVC has suffered, is suffering and will continue to suffer damage to its business, reputation and goodwill, and the loss of sales and profits SVC would have made but for Defendants' acts, in an amount to be determined at trial.

49.     The aforesaid acts and conduct of Defendants are, and unless enjoined will continue to be, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## SECOND CLAIM
### (Violation of Federal Trademark Dilution Act – 15 U.S.C. § 1125(c))

50.     Plaintiff SVC repeats and realleges each and every allegation contained in Paragraphs 1 through 49 of the Complaint as if set forth in full herein.

51.     SVC is the owner of extensive trademark rights in the name GATORADE, the trade dress associated with various GATORADE products and in other names and logos including without limitation the GATORADE lightning bolt logo (collectively, the "GATORADE Marks"), many of which are registered with the United States Patent and Trademark Office.  Through years of extensive use, advertising and promotion, the GATORADE Marks including the lightning bolt logo have become widely recognized by the consuming public as a designation of source for SVC's goods and are famous throughout the United States.

52.     The conduct of Defendants, as described above and otherwise, constitutes unlawful use of GATORADE's famous and distinctive marks and trade dress in a manner that is likely to cause dilution through tarnishment of the GATORADE marks and trade dress, in that Defendants' advertising campaign, as described above, presents false and misleading statements about GATORADE products and depicts GATORADE products, marks, and trade dress under circumstances that tarnish, disparage, and denigrate the famous GATORADE brand, product, and trade dress, all in violation of 15 U.S.C. § 1125(c).

53.     Defendants are willfully, knowingly and intentionally structuring advertisements in an attempt to dilute SVC'S GATORADE's marks and trade dress, and Defendant intend to continue distributing and publishing such misleading advertisements unless enjoined by this Court, so as to deceive, mislead and confuse consumers and the purchasing public as to the quality and characteristics of GATORADE while making claims of Powerade ION[4]'s purported superiority.

54.     By reasons of and as a direct and proximate result of Defendants' unlawful acts and practices, including those set forth above, Defendants have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to SVC, for which there is no adequate remedy at law, and for which SVC is entitled to injunctive relief.

55.     By reason of Defendants' unlawful acts and practices, SVC has suffered, is suffering and will continue to suffer damage to its business, reputation and goodwill, and the loss of sales and profits SVC would have made but for Defendants' acts, in an amount to be determined at trial.

56.     The aforesaid acts and conduct of Defendants are, and unless enjoined will continue to be, in violation of 15 U.S.C. § 1125(c).

### THIRD CLAIM
#### (Unfair Competition Under New York State Law)

57.     Plaintiff SVC repeats and realleges each and every allegation contained in Paragraphs 1 through 56 of the Complaint as if set forth in full herein.

58.     The aforesaid acts and conduct of Defendants are, and unless enjoined, will continue to constitute, unfair competition in violation of the law of the State of New York.

59.     Upon information and belief, the aforesaid acts and conduct of Defendants have been willful and knowing.

60.     Plaintiff SVC has been, and continues to be, injured by Defendants' unfair conduct, and has no adequate remedy at law.

61.     As a result of Defendants' unfair competition, SVC has suffered damages in an amount to be determined at trial.

## FOURTH CLAIM
### (Trademark Dilution Under New York State Law)

62.     Plaintiff SVC repeats and realleges each and every allegation contained in Paragraphs 1 through 61 of the Complaint as if set forth in full herein.

63.     The aforesaid acts and conduct of Defendants are likely to dilute and detract from the distinctiveness of the GATORADE trademark and trade dress and have tarnished and are likely to tarnish the GATORADE trademark and trade dress, with consequent damage to the goodwill symbolized by said trademarks, in violation of New York's Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-l.

64.     Upon information and belief, the aforesaid acts and conduct of Defendants have been willful and knowing.

65.     SVC has been, and continues to be, injured by Defendants' acts of trademark dilution, and has no adequate remedy at law.

66.     As a result of Defendants' acts of trademark dilution, SVC has suffered damages in an amount to be determined at trial.

## FIFTH CLAIM
### (Deceptive Acts and Practices Under New York State Law)

67.     Plaintiff SVC repeats and realleges each and every allegation contained in Paragraphs 1 through 66 of the Complaint as if set forth in full herein.

68.     The aforesaid acts and conduct of Defendants are, and unless enjoined, will continue to constitute deceptive acts and practices in violation of N.Y. Gen. Bus. Law §§ 349 and 350-a.

69.     Upon information and belief, the aforesaid acts and conduct of Defendants have been willful and knowing.

70.     As a result of Defendants' deceptive acts and practices, SVC has suffered

damages in an amount to be determined at trial.

## SIXTH CLAIM
### (Common Law Unfair Competition)

71.     Plaintiff SVC repeats and realleges each and every allegation contained in

paragraphs 1 through 70 of the Complaint as if set in full herein.

72.     Upon information and belief, the aforesaid acts and conduct of Defendants have

been willful and knowing.

73.     The aforesaid acts and conduct of Defendants constitute unfair competition under

the common law.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff SVC requests the following relief:

A)      That this Court enter an order preliminarily and permanently enjoining and

        restraining Defendants, their respective officers, directors, employees, agents,

        licensees, servants, representatives, successors and assigns, and any and all

        persons in active concert or participation with any of them, from any further use,

        distribution or exhibition of any advertising, packaging and/or promotional

        materials, including without limitation the Label, Billboard Advertising, ESPN

        Cover Take-Over, Stack Cover Take-Over, the Alternative Print Ad, point-of-sale

        and in-store display materials, and Website Ad, which:  (1) falsely state, imply or

        otherwise communicate that: (a) Powerade ION[4] will improve performance as

        compared to SVC's GATORADE product; (b) GATORADE is missing

        components or is incomplete; (c) Powerade ION[4] will improve performance as

        compared to GATORADE; or (d) Powerade ION[4] is complete; (2) misrepresent

the nature, characteristics, and qualities of GATORADE or Powerade ION[4]; (3) contain other false and deceptive information or statements, including, without limitation, false and deceptive comparisons between GATORADE and Powerade ION[4]; or (4) dilute or disparage the famous GATORADE trade marks and/or trade dress.

B)      That this Court direct Defendants to recall from any and all channels of distribution any and all Powerade ION[4] products bearing the Label or any other label or packaging material which include false and deceptive statements about Powerade ION[4] and/or GATORADE;

C)      That this Court direct Defendants to take down any and all billboards improperly depicting GATORADE or which include false and deceptive statements about Powerade ION[4] or GATORADE;

D)      That this Court require Defendants to account for and pay SVC any and all profits derived by Defendants from the manufacture, production, distribution, sale or other exploitation of Powerade ION[4] using advertising or promotional materials, and/or other materials in violation of SVC's rights;

E)      That this Court require Defendants to engage in advertising to correct the false and deceptive statements about GATORADE, Powerade ION[4] and the disparagement of the GATORADE trademarks and trade dress;

F)      That this Court award SVC damages against Defendants in an amount to be determined at trial;

G)      That, given the willful nature of Defendants' acts, this Court enter judgment pursuant to 15 U.S.C. § 1117(a) in an amount to include Defendants' profits

derived from its infringement of SVC's rights, three times the damages sustained by SVC, as well as the costs of the action;

H) That given the willful nature of Defendants' acts, this Court award plaintiff punitive damages in an amount to be determined at trial;

I) That this Court award SVC its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and N.Y. Gen. Bus. Law §§ 349 and 350-a; and

J) That this Court grant such other and further relief as it shall deem just and proper under applicable law, including interest and disbursements of this action.

Dated: April 13, 2009

PROSKAUER ROSE

By: _____

Louis M. Solomon (LS-7906)
Brendan J. O'Rourke (BO-2351)
Kevin J. Perra (KP-3723)

1585 Broadway
New York, New York 10036-8299
Phone: (212) 969-3000
Fax: (212) 969-2900

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Edward H. Rosenthal (ER-8022)
Brian G. Murphy (BM-9173)
Jessie F. Beeber (JB-3129)
488 Madison Avenue
New York, New York 10022
Phone: (212) 980-0120
Fax: (212) 593-9175

*Attorneys for Plaintiff Stokely-Van Camp, Inc.*